## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SILVIA LAZO, BRUCE GOLDMAN,
R. CHRISTOPHER DEBOER,
BRYON MINER, individually and on behalf
of all other similarly situated persons,

         **CLASS ACTION COMPLAINT**
          **JURY TRIAL DEMANDED**

   Plaintiffs,

v.

REDCLIFFE MEDICAL DEVICES, INC.,

   Defendant.

_____/

## CLASS ACTION COMPLAINT

Plaintiffs Silvia Lazo, Bruce Goldman, R. Christopher DeBoer, and Bryan Miner ("Plaintiffs"), on behalf of themselves and all other similarly situated persons, state as follows in their Class Action Complaint against Defendant Redcliffe Medical Devices, Inc. ("Redcliffe" or "Defendant"):

## INTRODUCTION

1. Redcliffe sought to capitalize on the human suffering caused by the COVID-19 pandemic. Redcliffe advertised and sold millions of dollars of its Leaf line of facemasks to unsuspecting consumers. Redcliffe advertises the Leaf masks as: (1) N95, N99, N100 rated transparent, self-cleaning, air-quality sensing reusable masks, (2) FDA approved, and (3) made in the USA. None of these things are true.

1

In reality, Redcliffe advertised these alleged virtues of its Leaf masks as a way to obtain free money from thousands of customers. Instead of delivering the products that Redcliffe advertised to its customers, Redcliffe delivered nothing, stealing millions of dollars from its customers in the process.

## PARTIES

2.     Plaintiff Silvia Lazo ("Lazo") is an individual who is a citizen of the State of Montana and resides in Montana.  Plaintiff Lazo purchased Leaf masks on June 24, 2020 and July 1, 2020, for $224 and $699, respectively. To this day, Plaintiff Lazo has not received the Leaf masks that she paid for and has not received any of the stretch goal products promised to her by Redcliffe.

3.     Plaintiff Bryon Miner ("Miner") is an individual who is a citizen of the State of California and resides in California. Plaintiff Miner purchased a "Leaf UV pack of (2)" on or about August 5, 2020 for $175.00. Redcliffe stated the expected delivery date of these purchased products was September 2020. Plaintiff Miner also purchased "Leaf PRO Pack" and "6 Month HEPA-Carbon (Single)" packages for $273.00. To this day, Plaintiff Miner has not received the Leaf products that he paid for and has not received any of the stretch goal products promised to him by Redcliffe.

4.     Plaintiff Bruce Goldman ("Goldman") is an individual who is a citizen of Michigan and resides in Michigan. Plaintiff Goldman purchased a "Leaf HEPA

Pack" on or about May 14, 2020 for $49.00. To this day, Plaintiff Goldman has not received the Leaf mask that he paid for and has not received any of the stretch goal products promised to him by Redcliffe.

5.    Plaintiff R. Christopher DeBoer ("DeBoer") is an individual who is a citizen of Michigan and resides in Michigan. Plaintiff DeBoer purchased the following: (1) on or about June 23, 2020, he purchased a "Leaf UV family pack of (4)" for $331.00; (2) on or about July 12, 2020, he purchased a "Leaf PRO family pack of (4)" for $708.00; (3) on or about July 12, 2020, he purchased two sets of "6 Month HEPA-Carbon" for $69.00 each; (4) on or about July 12, 2020, he purchased a "Leaf PRO Pack" for $204.00. To this day, Plaintiff DeBoer has not received the products that he paid for and has not received any of the stretch goal products promised to him by Redcliffe.

6.    Defendant Redcliffe Medical Devices, Inc. is a Michigan corporation headquartered in, doing business in, and having its "nerve center," and therefore its principal place of business, in Michigan.

## JURISDICTION AND VENUE

7.    This action is properly before this Court and this Court has subject matter jurisdiction over this action under the Class Action Fairness Act. At least one member of the proposed class is a citizen of a different state from Redcliffe, the number of proposed Class Members exceeds 100, and the amount in controversy

exceeds the sum or value of $5,000,000.00 exclusive of interests and costs. 28 U.S.C.

§ 1332(d)(2)(A). This Court has jurisdiction over supplemental state law claims

pursuant to 20 U.S.C. § 1367 and jurisdiction over the Lanham Act claim by virtue

of diversity jurisdiction being exercised under the Class Action Fairness Act

("CAFA").

8.     This Court has personal jurisdiction over Redcliffe pursuant to 18

U.S.C. § 1965(b) & (d). This Court has personal jurisdiction over Redcliffe because

Redcliffe is headquartered in Michigan, has its principal place of business here, and

has purposefully availed itself of the privilege of conducting business activities in

the State of Michigan.

9.     Venue is proper in this District, pursuant to 28 U.S.C. § 1391, because

a substantial part of the acts or omissions giving rise to the claims brought herein

occurred or emanated within this District, and Redcliffe has caused harm to Plaintiffs

and Class Members residing in this District. Moreover, Redcliffe has marketed,

advertised, and sold the products at issue within this District.

## **FACTUAL ALLEGATIONS**

10.     Plaintiffs incorporate all previous allegations by reference as if fully

restated herein.

11.     In 2020, as the COVID-19 pandemic spread across the United States,

Redcliffe began marketing and selling Leaf masks and other products through the

crowdfunding platform Indiegogo.com.[1] Redcliffe also began marketing and selling Leaf masks and other products through its own website.[2]

12.     Plaintiffs and Class Members purchased the Leaf masks and products (referred to as "perks" on Indiegogo) because they relied on Redcliffe's fraudulent marketing and advertising which misrepresented the quality and characteristics of its Leaf masks. For example, Redcliffe advertised the Leaf products as N95, N99, N100 rated transparent, self-cleaning, air-quality sensing reusable masks. Additionally, Redcliffe states on its website that "The Leaf Pro deploys cutting-edge aerospace-grade N100, MERV20+ HEPA Filters. With filtration material rated at N100 standard, the filters can sieve 99.97% of 0.3 micron particles making it N100 standard. The cutting-edge material is pleated into 25 pleats to dramatically enhance the surface area of the filter to up-to 5X the effective surface area of a conventional mask while dramatically reducing the space required for the filter itself. All in all, it allows you to breathe effortlessly. The HEPA-Carbon filter also adds a layer of Activated Carbon filter to absorb volatile organic compounds and odors." All of these statements are false. At other places, Redcliffe states that the Leaf masks are "FDA Approved" and "Made in the USA," but they are not.[3]

---

[1] Exhibit 1, https://www.indiegogo.com/projects/leaf-mask-world-s-first-fda-uv-c-n99-clear-mask#/ (last visited February 15, 2021).

[2] *See* Exhibit 2, https://www.leaf.healthcare (last visited Feb. 15, 2021).

[3] *Id.*

13.    As shown below, Redcliffe's representations specifically meant to induce consumers to purchase their masks to prevent the contraction and spread of COVID-19. However, in reality, these masks fail to stop the spread of COVID-19 — risking the lives of all purchasers who rely on the masks' effectiveness.



14.    In fact, the Leaf masks are simply "registered" with the FDA, the FDA has not approved the masks as N95, N99, or N100 masks, nor has it determined that the masks have disinfecting capabilities.[4] In fact, as shown in Exhibit 3, the FDA's

---

[4] *See* Exhibit 3,
https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfrl/rl.cfm?lid=686491&lpcd=QKR; (last visited Feb. 15, 2021);
Exhibit 4,
https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfPCD/classification.cfm?ID=2931 (last visited Feb. 15, 2021).

registration only concerns generic face masks and specifically excludes N95 respirators.

15.     Additionally, the National Personal Protective Technology Laboratory ("NIOSH") has not approved the Leaf masks as N99 masks.[5]

16.     Plaintiffs and Class Members relied on Redcliffe's misrepresentations when purchasing the Leaf masks. If Redcliffe had properly disclosed the true qualities and characteristics of the masks, Plaintiffs would not have purchased these masks.

17.     As evidenced by Redcliffe's Indiegogo page (Ex. 1), Redcliffe has sold approximately $4.4 million worth of Leaf masks and products to over 25,000 purchasers, just through its Indiegogo campaign. This figure does not include direct sales from its website and other sources. These products/packages ranged in price from $49-$9,999. However, despite over $4 million in sales, Redcliffe has failed to deliver these products to Class Members, or has delivered them with significant delays, with many Plaintiffs and Class Members waiting months to receive their purchased products, if received at all. The small number of masks that have been delivered have been delivered with material defects which eliminate any protection the mask is meant to offer from COVID-19, such as holes in the filter of the mask,

---

[5] *See* Exhibit 5,
https://www.cdc.gov/niosh/npptl/topics/respirators/disp_part/n99list1.html (last visited Feb. 15, 2021).

filters with no NIOSH ratings at all, lack of any antimicrobial coating or any of the falsely represented characteristics that induced the Plaintiffs into buying the Leaf masks in the first place. The masks are of considerably lesser quality than those marketed by Redcliffe.

18.     Instead of delivering the Leaf masks to Plaintiffs and Class Members who provided payment to Redcliffe, Redcliffe improperly retained these payments while failing to timely deliver the Leaf masks to Plaintiffs and Class Members. Plaintiffs and Class Members relied on Redcliffe's misrepresentations when purchasing the Leaf masks. Plaintiffs and Class Members believed that upon payment for the Leaf masks, Redcliffe would timely deliver the Leaf masks, but that has not happened.

19.     Additionally, Redcliffe represented to Plaintiffs and Class Members that as Redcliffe reached funding goals on its Indiegogo page (referred to as "stretch goals") all supporters would receive additional Leaf products (see below). However, despite reaching all these funding benchmarks, Redcliffe never sent these products to Plaintiffs or Class Members — another example of a misrepresentation meant to induce Plaintiffs and Class Members to purchase Leaf products.



20.     As evidenced on Indiegogo's page, over 7,000 comments have been left by consumers to Redcliffe, many of which are of purchasers who have waited many months but have failed to receive their masks. A small sample of these comments are below:



21.     When Plaintiffs and Class Members purchase the Leaf products, they send payment to Indiegogo, the crowdfunding platform hosting the Leaf program for Redcliffe. Indiegogo then directs these funds to Redcliffe. On August 26, 2020, due to Redcliffe's failure to fulfill its obligations and deliver masks to Plaintiffs and Class Members, Indiegogo issued a message to Plaintiffs and Class Members stating that it was "holding" $3.3 million of the sales revenue until Redcliffe could deliver the ordered Leaf products to purchasers.[6] Additionally, as a result of Redcliffe's delays, Indiegogo "removed the campaign from the InDemand program in an effort to help the campaign owner focus on fulfilling their first perk batch." *Id.* As a result,

---

[6] *See* Exhibit 6, Email from Indiegogo.

consumers are no longer able to purchase Leaf products through the Indiegogo platform. Over 5 months have now passed since that message and the removal of Redcliffe's campaign from Indiegogo; yet, Plaintiffs and Class Members still have not received their purchased Leaf products.

22.     Plaintiffs seek damages suffered by the Class as a result of Redcliffe's conduct, including but not limited to: (a) the money paid for the Leaf masks; and (b) reimbursement of out-of-pocket costs for, among other things, alternative masks.

23.     Plaintiffs also seek injunctive relief including a prohibition on the distribution of any funds held by anyone for the Plaintiffs' and Class Members' purchase of Leaf masks being disbursed to Redcliffe.

## **CLASS ACTION ALLEGATIONS**

24.     Plaintiffs incorporate all previous allegations by reference as if fully restated herein.

25.     Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff seeks certification of the following class:

### **Nationwide Class:**

All persons who purchased any Leaf product directly or indirectly from Redcliffe at any time from January 1, 2020 to the present in the United States.

26.     In the alternative to the Nationwide Class, and pursuant to Fed. R. Civ.

P. 23(c)(5), Plaintiffs seeks to represent the following "State Subclasses."

### California Subclass:

All members of the Nationwide Class who are residents of California or purchased their Leaf product in California.

### Michigan Subclass:

All members of the Nationwide Class who are residents of Michigan or purchased their Leaf product in Michigan.

### Montana Subclass:

All members of the Nationwide Class who are residents of Montana or purchased their Leaf product in Montana.

27.     Excluded from the proposed Nationwide Class and each proposed Subclass are: Redcliffe, any affiliate, parent, or subsidiary of Redcliffe; any entity in which Redcliffe has a controlling interest; any officer, director, or employee of Redcliffe; any successor or assign of Redcliffe; anyone employed by counsel for Plaintiffs in this action; any judge to whom this case is assigned, her or her spouse, and all persons within the third degree of relationship to either of them, and the spouses of such persons; and anyone who purchased a Leaf product for resale.

**A.     Numerosity**

28.     The members of the classes are so numerous that joinder of all members is impracticable.  While the precise number of Class Members can only be confirmed through discovery, it is estimated that at least thousands of persons purchased Leaf

products.

**B.     Common Questions of Law and Fact Predominate**

29.     There is a well-defined community of interest in the questions of law and fact affecting the Class Members.

30.     There are questions of law and fact common to all members of each Class: specifically, Plaintiffs' claims arise from the same event or practice or course of conduct by Redcliffe that gives rise to those claims of the putative classes, and Plaintiffs' claims are based upon the same legal theories as those of the putative classes. Redcliffe has engaged in a pattern and practice, in violation of the law. Specifically, Redcliffe sold the Leaf products that Plaintiffs and all Class Members purchased; Redcliffe advertised the Leaf products as N95, N99, N100 rated transparent, self-cleaning, air-quality sensing reusable masks;  Plaintiffs and all the Class Members relied upon Redcliffe's representations about the quality of its masks when they paid money to order them; Redcliffe knew that its statements about the Leaf masks were false and that Plaintiffs would rely on the statements in deciding to pay Redcliffe money; in reality, Redcliffe did not intend on providing anything to the Plaintiffs and the Class Members; Plaintiffs and the other members of the Class suffered damages in the form of the money paid for the Leaf masks they never received.

31.     The questions of law and fact common to the Class predominate over

questions that may affect individual members, and include:

> a.      Whether Redcliffe disclosed the true quality and characteristics of the Leaf Masks to Class Members prior to purchase;

> b.      Whether Redcliffe violated state consumer protection laws by concealing the true quality and characteristics of the Leaf masks;

> c.      Whether Redcliffe has systematically withheld the Leaf masks and failed to deliver them to Class Members after being purchased by Class Members;

> d.      Whether Class Members are entitled to actual damages and, if so, the appropriate amount; and

> e.      Whether Redcliffe deliberately failed to disclose material facts to Plaintiffs and the Class Members.

## C.      Typicality

32.      The claims and defenses of the Plaintiffs are representative of the Class Members they seek to represent and typical of the claims and defenses of the class because the Plaintiffs and the Class Members all purchased Leaf masks but did not receive the Leaf masks they purchased from Redcliffe.

## D.      Adequacy of Representation

33.      Plaintiffs will fairly and adequately assert and protect the interests of the proposed class because:

14

       a.     Plaintiffs have hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the classes;

       b.     Plaintiffs have no conflict of interest that will interfere with the maintenance of this class action; and

       c.     Plaintiffs have suffered consumer-related injuries and damages.

**E.    Superiority**

34.    A class action provides a fair and efficient method for the adjudication of the instant controversy for the following reasons:

       a.     The common questions of law and fact set forth above predominate over questions affecting only individual Class Members;

       b.     The proposed classes are each so numerous that joinder would prove impracticable. The proposed classes, however, are not so numerous as to create manageability problems; moreover, no unusual legal or factual issues render the class unmanageable.

       c.     Prosecution of separate actions by individual members of the class would risk inconsistent and varying adjudications against Redcliffe;

       d.     The claims of the individual Class Members are small in relation to the expenses of litigation, making a class action the only procedure in which Class Members can, as a practical matter, recover for the damages done to

them by Redcliffe.

     e.    A class action would be superior to, and more efficient than, adjudicating thousands of individual lawsuits.

35.    In the alternative, the proposed classes may be certified because:

     a.    The prosecution of separate actions by the individual members of the proposed classes would create a risk of inconsistent or varying adjudication regarding individual Class Members, which would establish incompatible standards of conduct for Redcliffe;

     b.    The prosecution of separate actions by individual Class Members would create a risk of adjudications dispositive of the interests of other Class Members not parties to the adjudications and substantially impair or impede their ability to protect their interests; and

     c.    Redcliffe has acted or refused to act on grounds generally applicable to the proposed class, which justifies final and injunctive relief for the members of the proposed class as a whole.

## <u>COUNT I – VIOLATIONS OF THE LANHAM ACT</u><br><u>(15 U.S.C.A. § 1125)</u><br><u>(On behalf of the Nationwide Class)</u>

36.    Plaintiffs hereby re-allege and incorporate all preceding paragraphs by reference as though fully restated herein.

37.    The Lanham Act (15 U.S.C.A. § 1125) prohibits "[a]ny person who, or

in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which – (A) is likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C.A. § 1125(a)(1).

38.    In the course of its business, Redcliffe willfully failed to disclose that the Leaf masks do not provide the particle-filtering, self-cleaning, air-quality sensing capabilities as advertised and certified, and their quality and characteristics are far worse than a reasonable consumer would expect given the representations made by Redcliffe. Redcliffe also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Leaf masks.

39.    Redcliffe also concealed the fact that it did not intend to deliver the

Leaf products to Plaintiffs and Class Members upon their purchase of these products.

40.    Redcliffe's unfair or deceptive acts or practices were likely to and did in fact cause confusion and mistake and deceive reasonable consumers, including Plaintiffs and Class Members, about the particle-filtering, self-cleaning, air-quality sensing capabilities of the Leaf masks, and that their quality and characteristics are far worse than a reasonable consumer would expect given the representations made by Redcliffe.

41.    Redcliffe intentionally and knowingly misrepresented material facts regarding the Leaf masks with intent to mislead Plaintiffs and Class Members.

42.    Redcliffe knew or should have known that its conduct violated the Lanham Act.

43.    Absent Redcliffe's misrepresentations and omissions, Plaintiffs and Class Members would not have purchased the Leaf products, would not have purchased the Leaf products at the prices they paid, and/or would have purchased alternative or less expensive masks of higher quality that they could have received immediately. Accordingly, Plaintiffs and Class Members overpaid for the Leaf products and did not receive the benefit of their bargain.

44.    As a direct and proximate result of Redcliffe's breach of the Agreement, Plaintiffs and Class Members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages,

incidental and consequential damages, and other damages allowed by law. Plaintiffs and Class Members also seek equitable relief including, but not limited to, recission and disgorgement.

## COUNT II - BREACH OF CONTRACT
### (On behalf of the Nationwide Class or, alternatively, the State Subclasses)

45.     Plaintiffs hereby re-allege and incorporate all preceding paragraphs by reference as though fully restated herein.

46.     The Plaintiffs and Class Members each had an Agreement with Redcliffe for the purchase of Leaf masks.

47.     Redcliffe's misrepresentations and omissions alleged herein, including Redcliffe's failure to disclose the true quality and characteristics of the Leaf masks and that delivery of the product would either be significantly delayed or would not occur, caused Plaintiffs and Class Members to make their purchases of Leaf products. Absent those misrepresentations and omissions, Plaintiffs and Class Members would not have purchased the Leaf products, would not have purchased the Leaf products at the prices they paid, and/or would have purchased alternative or less expensive masks of higher quality that they could have received immediately. Accordingly, Plaintiffs and Class Members overpaid for the Leaf products and did not receive the benefit of their bargain.

48.     By failing to deliver the Leaf masks as agreed and by absconding with Plaintiffs' money, Redcliffe has materially breached the Agreement.

49.     Due to Redcliffe's actions, specific performance of the contract is not an adequate remedy and Plaintiffs and Class Members seek recission.

50.     As a direct and proximate result of Redcliffe's breach of the Agreement, Plaintiffs and Class Members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law. Plaintiffs and Class Members also seek equitable relief including, but not limited to, recission and disgorgement.

## COUNT III – FRAUDULENT MISREPRESENTATION
### (On behalf of the Nationwide Class or, alternatively, the State Subclasses)

51.     Plaintiffs incorporate herein all previous allegations made in this Complaint as if fully restated herein.

52.     Redcliffe made material representations to Plaintiffs that they would deliver the Leaf masks as advertised, that the masks would have the qualities and characteristics that Redcliffe advertised, and that the certifications and approvals Redcliffe advertised were true.

53.     These material representations were false.

54.     Redcliffe either knew that these representations were false or made them recklessly without knowledge of their truth.

55.     Redcliffe made these representations with the intent that Plaintiffs would rely upon them and pay money to Redcliffe.

56.     Plaintiffs did, in fact, act in reliance upon Redcliffe's representations.

57.     Plaintiffs, as a result, suffered damages.

58.     As a direct and proximate result of Redcliffe's fraudulent misrepresentation, Plaintiffs and Class Members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law. Plaintiffs and Class Members also seek equitable relief including, but not limited to, recission and disgorgement.

## COUNT IV – FRAUDULENT CONCEALMENT
### (On behalf of the Nationwide Class or, alternatively, the State Subclasses)

59.     Plaintiffs incorporate herein all previous allegations made in this Complaint as if fully restated herein.

60.     Redcliffe concealed the true qualities and characteristics of the Leaf masks and products. Despite numerous opportunities to do so, Redcliffe failed to convey the true nature of the masks and products to Plaintiffs and Class Members.

61.     Redcliffe also concealed the fact that it did not intend to deliver the Leaf products to Plaintiffs and Class Members upon their purchase of these products.

62.     Redcliffe could have provided this information to Plaintiffs and Class Members through either: Redcliffe's website, the Indiegogo platform, through correspondence to Plaintiffs and Class Members at the time of their purchase, or other direct correspondence to Plaintiffs and Class Members. However, Redcliffe

failed to provide this information and concealed it from Plaintiffs and Class Members.

63.     Redcliffe had a duty to disclose that it did not intend to deliver these masks and products to Plaintiffs and Class Members and that the products do not meet the quality and characteristics that Redcliffe claims they do. The masks and products are far worse than a reasonable consumer would expect given Redcliffe's representations and the premium prices paid for the products and Redcliffe had exclusive knowledge of the true quality and characteristics of the products and the timeline of delivering the products to Plaintiffs and Class Members. Having volunteered information, Redcliffe had a duty to provide not just the partial truth, but the whole truth.

64.     Because Plaintiffs and Class Members relied on Redcliffe's material representations or omissions of fact that the products they were purchasing were effective, of high quality, and operate in accordance with Redcliffe's assurances.

65.     As alleged in this Complaint, at all relevant times, Redcliffe has held out the Leaf products to be safe, effective, and of high quality and has intentionally failed to disclose the true quality of the products or that Redcliffe did not intend to deliver these marketed products to Plaintiffs and Class Members.

66.     The truth about the quality and characteristics of the Leaf products and the fact that Redcliffe did not intend to deliver them to Plaintiffs and Class Members

upon purchase was known only to Redcliffe. Plaintiffs and Class Members did not know of these facts and Redcliffe actively concealed these facts from Plaintiffs and Class Members.

67.    Plaintiffs and Class Members reasonably relied upon Redcliffe's deception. They had no way of knowing Redcliffe's representations were false and/or misleading. As consumers, Plaintiffs and Class Members did not, and could not, unravel Redcliffe's deception on their own.

68.    Redcliffe concealed and suppressed material facts concerning the true quality and characteristics with the Leaf products and the delivery of these products. Redcliffe put an emphasis on profits and sales over compliance with its contract with Plaintiffs and Class Members and applicable laws.

69.    Redcliffe's false representations were material to consumers because they concerned the quality and characteristics of products meant to protect Plaintiffs and Class Members from the deadly COVID-19 pandemic. Redcliffe's representations played a significant role in the purchasing decisions of Plaintiffs and Class Members.

70.    Redcliffe still has not made full and adequate disclosures and continues to defraud Plaintiffs and Class Members.

71.    Plaintiffs and Class Members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known

of the concealed and/or suppressed facts, in that they would not have purchased the Leaf products.

72.     Because of the concealment and/or suppression of the facts, Plaintiffs and Class Members have sustained damage because they overpaid for products and suffered and continue to suffer increased costs related to purchasing alternative, effective masks. Had they been aware of the true facts, Plaintiffs and Class Members would not have purchased the Leaf products or would have paid less.

73.     Accordingly, as a direct and proximate result of Redcliffe's actions, Redcliffe is liable to Plaintiffs and Class Members for damages in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law. Plaintiffs and Class Members also seek equitable relief including, but not limited to, recission and disgorgement.

74.     Redcliffe's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class Members' rights and the representations that Redcliffe made to them in order to enrich Redcliffe. Redcliffe's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined at trial.

## COUNT V – STATUTORY CONVERSION
## (MICH. COMP. LAWS § 600.2919a)
## (On behalf of the Nationwide Class or, alternatively, the State Subclasses)

75.     Plaintiffs incorporate herein all previous allegations made in this Complaint as if fully restated herein.

76.     Redcliffe's actions described in the Complaint constitute a wrongful conversion of Plaintiffs' and Class Members' money in violation of MICH. COMP. LAWS § 600.2919a.

77.     As set forth herein, Redcliffe wrongfully took control of and exerted dominion over specific, identifiable funds by means of fraud.

78.     Redcliffe converted Plaintiffs' money for its own use.

79.     As a direct and proximate result of Redcliffe's statutory conversion, Plaintiffs and Class Members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, treble damages, costs and attorneys' fees, and other damages allowed by law. Plaintiffs and Class Members also seek equitable relief including, but not limited to, recission and disgorgement.

80.     Pursuant to MICH. COMP. LAWS § 600.2919a, Plaintiffs are entitled to recover three times the amount of damages sustained, plus costs and reasonable attorney fees.

**COUNT VI – COMMON LAW CONVERSION**
**(On behalf of the Nationwide Class or, alternatively, the State Subclasses)**

81.     Plaintiffs incorporate herein all previous allegations made in this Complaint as if fully restated herein.

82.     Redcliffe's actions as described in the Complaint constitute a wrongful conversion of Plaintiffs' and Class Members' money in violation of common law.

83.     As set forth herein, Redcliffe wrongfully took control of and exerted dominion over specific, identifiable funds by means of fraud.

84.     The acts described in this Complaint constitute an unlawful conversion of Plaintiffs' property, resulting in damages to Plaintiff.

85.     As a direct and proximate result of Redcliffe's common law conversion, Plaintiffs and Class Members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law. Plaintiffs and Class Members also seek equitable relief including, but not limited to, recission and disgorgement.

**COUNT VII – EMBEZZLEMENT**
**(MICH. COMP. LAWS § 600.2919a & MICH. COMP. LAWS § 750.174)**
**(On behalf of the Nationwide Class or, alternatively, the State Subclasses)**

86.     Plaintiffs incorporate herein all previous allegations made in this Complaint as if fully restated herein.

87.     Redcliffe has wrongfully exerted dominion over, converted, and/or

embezzled property belonging, in whole or in part, to Plaintiffs with the intent of taking and controlling the same to the exclusion of Plaintiffs under common law and statutory law pursuant to MICH. COMP. LAWS § 600.2919a and MICH. COMP. LAWS § 750.174.

88.    As a direct and proximate result of Redcliffe's embezzlement, Plaintiffs and Class Members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, treble damages, costs and attorneys' fees, and other damages allowed by law. Plaintiffs and Class Members also seek equitable relief including, but not limited to, recission and disgorgement.

89.    Pursuant to MICH. COMP. LAWS § 600.2919a, Plaintiffs are entitled to recover three times the amount of damages sustained, plus costs and reasonable attorney fees.

## COUNT VIII – UNJUST ENRICHMENT
### (On behalf of the Nationwide Class or, alternatively, the State Subclasses)

90.    Plaintiffs incorporate herein all previous allegations made in this Complaint as if fully restated herein.

91.    As a result of Redcliffe's wrongful activities as fully described in this Complaint, Redcliffe has been unjustly enriched, including, but not limited to, the amounts of funds paid to them, converted and obtained by fraud from Plaintiff.

92.    Retention of such benefits by Redcliffe is inequitable.

27

93.     As a direct and proximate result of Redcliffe's unjust enrichment, Plaintiffs and Class Members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law. Plaintiffs and Class Members also seek equitable relief including, but not limited to, recission and disgorgement.

**COUNT IX – MICHIGAN CONSUMER PROTECTION ACT**
**(MICH. COMP. LAWS § 445.903 *et seq.*)**
**(On behalf of the Michigan Subclass)**

94.     Plaintiffs incorporate all previous allegations as though fully restated herein.

95.     The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce," including "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer"; "[m]aking a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is"; or "[f]ailing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." MICH. COMP. LAWS § 445.903(1).

96.     Plaintiffs and Class Members are "person[s]" within the meaning of the

MICH. COMP. LAWS § 445.902(1)(d).

97.    Redcliffe is a "person" engaged in "trade or commerce" within the meaning of the MICH. COMP. LAWS § 445.902(1)(d) and (g).

98.    In the course of its business, Redcliffe willfully failed to disclose that the Leaf masks do not provide the particle-filtering, self-cleaning, air-quality sensing capabilities as advertised and certified, and their quality and characteristics are far worse than a reasonable consumer would expect given the representations made by Redcliffe. Redcliffe also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Leaf masks.

99.    Redcliffe also concealed the fact that it did not intend to deliver the Leaf products to Plaintiffs and Class Members upon their purchase of these products.

100.   Redcliffe's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the particle-filtering, self-cleaning, air-quality sensing capabilities of the Leaf masks, and that their quality and characteristics are far worse than a reasonable consumer would expect given the representations made by Redcliffe.

101.   Redcliffe intentionally and knowingly misrepresented material facts

29

regarding the Leaf masks with intent to mislead Plaintiffs and Class Members.

102.    Redcliffe knew or should have known that its conduct violated the Michigan CPA.

103.    Redcliffe owed Plaintiffs and Class Members a duty to disclose the true qualities and characteristics of the Leaf masks, because Redcliffe:

      a.  Possessed exclusive knowledge that the testing, certification, and representations of particle-filtering, self-cleaning, air-quality sensing capabilities were false;

      b.  Intentionally concealed the foregoing from Plaintiffs and Class Members; and/or

      c.  Made incomplete representations that it the certification testing was false and failed to disclose the true performance of the Leaf masks, while purposefully withholding material facts from Plaintiffs and Class Members that contradicted these representations.

104.    Redcliffe's omissions and/or misrepresentations about the particle-filtering, self-cleaning, air-quality sensing capabilities of the Leaf masks, and that their quality and characteristics are far worse than a reasonable consumer would expect were material to Plaintiffs and Class Members.

105.    Plaintiffs and Class Members suffered ascertainable loss caused by Redcliffe's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs and Class Members who purchased the Leaf masks either would have paid less for these masks or would not have purchased them at all but for Redcliffe's violations of the Michigan CPA.

106.    Redcliffe had an ongoing duty to all its customers to refrain from unfair

and deceptive practices under the Michigan CPA. As a direct and proximate result of Redcliffe's violations of the Michigan CPA, Plaintiffs and Class Members have suffered injury-in-fact and/or actual damage.

107. Redcliffe's violations present a continuing risk to Plaintiffs and Class Members as well as to the general public. Redcliffe's unlawful acts and practices complained of herein affect the public interest.

108. Plaintiffs and Class Members seek injunctive relief to enjoin Redcliffe from continuing their unfair and deceptive acts; monetary relief against Redcliffe measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for each plaintiff; reasonable attorneys' fees; and any other just and proper relief available under MICH. COMP. LAWS § 445.911. Plaintiffs and Class Members also seek equitable relief including, but not limited to, recission and disgorgement.

109. Plaintiffs and Class Members also seek punitive damages because Redcliffe carried out despicable conduct with willful and conscious disregard of the rights of others. Redcliffe's conduct constitutes malice, oppression, and fraud warranting punitive damages.

**COUNT X – VIOLATIONS OF THE CALIFORNIA UNFAIR
COMPEITION LAW
(CAL. BUS. & PROF. CODE § 17200 ET SEQ.)
(On behalf of the California Subclass)**

110. Plaintiffs incorporate all previous allegations as though fully restated

herein.

111.    California's Unfair Competition Law (UCL), CAL. BUS. & PROF. CODE § 17200 *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

112.    Redcliffe's conduct, as described herein, was and is in violation of the UCL. Redcliffe's conduct violates the UCL in at least the following ways:

    d.  By failing to disclose that the Leaf masks do not achieve the functionality stated in Redcliffe's advertising;

    e.  By knowingly and intentionally concealing from Plaintiffs and Class Members that the Leaf masks do not provide the particle-filtering, self-cleaning, air-quality sensing capabilities that were advertised, and their quality and characteristics are far worse than a reasonable consumer would expect to pay for these masks;

    f.  By failing to disclose that the quality and characteristics of the masks are achieved with manipulation of the particle-filtering standards;

    g.  By marketing the Leaf masks as N95, N99, N100 rated transparent, self-cleaning, air-quality sensing reusable masks; and

    h.  By violating other California laws, including California consumer protection laws.

    i.  By failing to deliver the purchased Leaf masks to Plaintiffs and Class Members.

113.    Redcliffe intentionally and knowingly misrepresented material facts regarding the Leaf masks with an intent to mislead Plaintiffs and Class Members.

114.    In purchasing the Leaf masks, Plaintiffs and Class Members were deceived by Redcliffe's failure to disclose that the Leaf masks do not provide the particle-filtering, self-cleaning, air-quality sensing capabilities as advertised and

certified, and their quality and characteristics are far worse than a reasonable consumer would expect given the representations made by Redcliffe.

115. Plaintiffs and Class Members reasonably relied upon Redcliffe's false misrepresentations. They had no way of knowing that Redcliffe's representations were false and gravely misleading. As alleged herein, Redcliffe engaged in extremely sophisticated methods of deception. Plaintiffs and Class Members did not, and could not, unravel Redcliffe's deception on their own.

116. Redcliffe knew or should have known that its conduct violated the UCL.

117. Redcliffe owed Plaintiffs and Class Members a duty to disclose the truth about its quality and characteristics manipulation because Redcliffe:

> j. Possessed exclusive knowledge that the testing, certification, and representations of particle-filtering, self-cleaning, air-quality sensing capabilities of the Leaf masks was false;
> k. Intentionally concealed the foregoing from Plaintiffs and Class Members; and/or
> l. Made incomplete representations that the certification testing was false and failed to disclose the true quality and characteristics of the Leaf masks, while purposefully withholding material facts from Plaintiffs and Class Members that contradicted these representations.

118. Redcliffe had a duty to disclose that the Leaf masks do not provide the particle-filtering, self-cleaning, air-quality sensing capabilities that were advertised and certified, and their quality and characteristics are far worse than a reasonable consumer would expect given the price paid for these masks and the representation

made by Redcliffe.

119.    Redcliffe's conduct proximately caused injuries to Plaintiffs and Class Members.

120.    Plaintiffs and Class Members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Redcliffe's conduct in that Plaintiffs and Class Members overpaid for the Leaf masks. These injuries are the direct and natural consequence of Redcliffe's misrepresentations and omissions.

121.    Redcliffe's violations present a continuing risk to Plaintiffs and Class Members as well as to the general public. Redcliffe's unlawful acts and practices complained of herein affect the public interest.

122.    Redcliffe's misrepresentations and omissions alleged herein caused Plaintiffs and Class Members to make their purchases of the Leaf masks. Absent those misrepresentations and omissions, Plaintiffs and Class Members would not have purchased these masks, would not have purchased the Leaf masks at the prices they paid, and/or would have purchased less expensive alternative masks.

123.    Accordingly, Plaintiffs and Class Members have suffered injury in fact, including lost money, as a result of Redcliffe's misrepresentations and omissions.

124.    Plaintiffs request that this Court enter such orders or judgments as may

be necessary to restore to Plaintiffs and Class members any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in CAL. BUS. & PROF. CODE § 17203 and CAL. CIV. CODE § 3345; and for such other relief as may be appropriate. Plaintiffs and Class Members also seek equitable relief including, but not limited to, recission and disgorgement.

125.    Plaintiffs also seek punitive damages because Redcliffe engaged in aggravated and outrageous conduct.

## COUNT XI – VIOLATIONS OF THE CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT (CAL. BUS. & PROF. CODE § 1750 *ET SEQ.*) (On behalf of the California Subclass)

126.    Plaintiffs incorporate all previous allegations as though fully restated herein.

127.    California's Consumers Legal Remedies Act ("CLRA"), CAL. CIV. CODE § 1750, et seq., proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

128.    The Leaf masks are "goods" as defined in CAL. CIV. CODE §§ 1751(a).

129.    Plaintiffs and Class Members are "consumers" as defined in CAL. CIV. CODE § 1761(d), and Plaintiffs, the other Class Members, and Redcliffe are "person[s]" as defined in CAL. CIV. CODE § 1761(c).

35

130. Redcliffe's conduct, as described herein, was and is in violation of the CLRA. Redcliffe's conduct violates at least the following enumerated CLRA provisions:

    i. CAL. CIV. CODE § 1770(a)(2): Misrepresenting the approval or certification of goods;

    ii. CAL. CIV. CODE § 1770(a)(5): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities which they do not have;

    iii. CAL. CIV. CODE § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another;

    iv. CAL. CIV. CODE § 1770(a)(9): Advertising goods with intent not to sell them as advertised; and

    v. CAL. CIV. CODE § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

131. Plaintiffs and Class Members have suffered injury in fact and actual damages resulting from Redcliffe's material omissions and misrepresentations because they paid an inflated purchase price for the Leaf masks.

132. Because Redcliffe fraudulently concealed that the Leaf masks do not provide the particle-filtering, self-cleaning, air-quality sensing capabilities that were advertised and certified, and their quality and characteristics are far worse than a reasonable consumer would expect given the representation made by Redcliffe, Plaintiffs and Class Members have overpaid for the Leaf masks.

133. Redcliffe also concealed the fact that it did not intend to deliver the Leaf products to Plaintiffs and Class Members upon their purchase of these products.

134. Redcliffe knew, should have known, or was reckless in not knowing

that the Leaf masks do not provide the particle-filtering, self-cleaning, air-quality sensing capabilities that were advertised and certified, and their quality and characteristics are far worse than a reasonable consumer would expect.

135.   Plaintiffs and Class Members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Redcliffe's conduct in that Plaintiffs and Class Members overpaid for the Leaf masks. These injuries are the direct and natural consequence of Redcliffe's misrepresentations and omissions.

136.   Redcliffe's misrepresentations and omissions alleged herein caused Plaintiffs and Class Members to make their purchases of the Leaf masks. Absent those misrepresentations and omissions, Plaintiffs and Class Members would not have purchased these masks, would not have purchased the Leaf masks at the prices they paid, and/or would have purchased less expensive alternative masks.

137.   In accordance with Civil Code § 1780 (a), Plaintiffs and Class Members seek injunctive and equitable relief for Redcliffe's violations of the CLRA, including an injunction to enjoin Redcliffe from continuing its deceptive advertising and sales practices.

138.   Plaintiffs have provided Redcliffe with notice of its violations of the CLRA pursuant to CAL. CIV. CODE § 1782(a).

139.   Plaintiffs' and Class Members' injuries were proximately caused by

Redcliffe's fraudulent and deceptive business practices.

140. Therefore, Plaintiffs and Class Members are entitled to equitable and monetary relief under the CLRA. Plaintiffs and Class Members also seek equitable relief including, but not limited to, recission and disgorgement.

## COUNT XII – VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE § 17500 ET SEQ.) (On behalf of the California Subclass)

141. Plaintiffs incorporate all previous allegations as though fully restated herein.

142. CAL. BUS. & PROF. CODE § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Redcliffe failed to disclose that the Leaf masks do not provide the particle-filtering, self-cleaning, air-quality sensing capabilities that were advertised and certified, and their quality and characteristics are far worse than a reasonable consumer would expect given the price paid for these masks and the representation made by Redcliffe.

143.    Redcliffe also concealed the fact that it did not intend to deliver the Leaf products to Plaintiffs and Class Members upon their purchase of these products.

144.    Redcliffe caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Redcliffe, to be untrue and misleading to consumers, including Plaintiffs and Class Members.

145.    Redcliffe has violated § 17500 because the misrepresentations and omissions regarding the functionality and efficiency of the Leaf masks as set forth in this Complaint were material and likely to deceive a reasonable consumer.

146.    Plaintiffs and Class Members have suffered an injury in fact, including the loss of money, as a result of Redcliffe's unfair, unlawful, and/or deceptive practices. In purchasing their Leaf masks, Plaintiffs and Class Members relied on the misrepresentations and/or omissions of Redcliffe with respect to the functionality and efficiency of the Leaf masks. Had Plaintiffs and Class Members known this, they would not have purchased the Leaf masks and/or paid as much for them. Accordingly, Plaintiffs and Class Members overpaid for the Leaf masks.

147.    All wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Redcliffe's business. Redcliffe's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both

in the State of California and nationwide.

148.    The facts concealed and omitted by Redcliffe to Plaintiffs and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Leaf masks or pay a lower price. Had Plaintiffs and Class Members known of the worse particle-filtering, self-cleaning, air-quality sensing capabilities at the time they purchased the Leaf masks, they would not have purchased those masks, or would have paid substantially less for the masks than they did.

149.    Plaintiffs and Class Members request that this Court enter such orders or judgments as may be necessary to restore to Plaintiffs and Class Members any money Redcliffe acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief as may be appropriate. Plaintiffs and Class Members also seek equitable relief including, but not limited to, recission and disgorgement.

## COUNT XIII – VIOLATIONS OF THE MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT OF 1973 (MONT. CODE ANN. § 30-14-101 *et seq.*) (On behalf of the Montana Subclass)

150.    Plaintiffs incorporate all previous allegations as though fully restated herein.

151.    The Montana Unfair Trade Practices and Consumer Protection Act ("Montana CPA") makes unlawful any "unfair methods of competition and unfair

or deceptive acts or practices in the conduct of any trade or commerce." MONT. CODE ANN. § 30-14-103.

152.     Redcliffe, Plaintiffs, and Class Members are "persons" within the meaning of MONT. CODE ANN. § 30-14-102(6).

153.     Plaintiffs and Class Members are "consumer[s]" under MONT. CODE ANN. § 30-14-102(1).

154.     The sale of each Leaf mask at issue occurred within "trade and commerce" within the meaning of MONT. CODE ANN. § 30-14-102(8), and Redcliffe committed deceptive and unfair acts in the conduct of "trade and commerce" as defined in that statutory section.

155.     In the course of its business, Redcliffe willfully failed to disclose that the Leaf masks do not have the advertised particle-filtering, self-cleaning, air-quality sensing capabilities and that these capabilities were far worse than a reasonable consumer would expect given the price paid for these masks over a comparable mask. Redcliffe also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Leaf masks.

156.     Redcliffe also concealed the fact that it did not intend to deliver the Leaf products to Plaintiffs and Class Members upon their purchase of these products.

157.    Redcliffe's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true functionality of the Leaf masks, the worse particle-filtering, self-cleaning, air-quality sensing capabilities and the true value of the Leaf masks.

158.    Redcliffe intentionally and knowingly misrepresented material facts regarding the Leaf masks with intent to mislead Plaintiffs and Class Members.

159.    Redcliffe knew or should have known that its conduct violated the Montana CPA.

160.    Redcliffe owed Plaintiffs and Class Members a duty to disclose the functionality, the worse particle-filtering, self-cleaning, air-quality sensing capabilities and the true value of the Leaf masks.:

      m. Possessed exclusive knowledge that the testing, certification, and representations of particle-filtering, self-cleaning, air-quality sensing capabilities were false;

      n. Intentionally concealed the foregoing from Plaintiffs and Class Members; and/or

      o. Made incomplete representations that it the certification testing was false and failed to disclose the true performance of the Leaf masks, while purposefully withholding material facts from Plaintiffs and Class Members that contradicted these representations.

161.    Redcliffe's omissions and/or misrepresentations about the functionality of the Leaf masks were material to Plaintiffs and Class Members.

162.    Plaintiffs and Class Members suffered ascertainable loss caused by Redcliffe's misrepresentations and its concealment of and failure to disclose material

information. Plaintiffs and Class Members who purchased the Leaf masks either would have paid less for their masks or would not have purchased them at all but for Redcliffe's violations of the Montana CPA.

163.   Redcliffe had an ongoing duty to all its customers to refrain from unfair and deceptive practices under the Montana CPA. As a direct and proximate result of Redcliffe's violations of the Montana CPA, Plaintiffs and Class Members have suffered injury-in-fact and/or actual damage.

164.   Redcliffe's violations present a continuing risk to Plaintiffs and Class Members as well as to the general public. Redcliffe's unlawful acts and practices complained of herein affect the public interest.

165.   Plaintiffs additionally seek an order enjoining Redcliffe's unfair, unlawful, and/or deceptive practices, and any other relief the Court considers necessary or proper, under MONT. CODE ANN. § 30-14-133. Plaintiffs and Class Members also seek equitable relief including, but not limited to, recission and disgorgement.

166.   Plaintiffs also seek punitive damages because Redcliffe engaged in aggravated and outrageous conduct.

## **REQUESTED RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Honorable Court enter an Order:

43

A.      Certifying the proposed Class under Fed. R. Civ. P. 23(b)(2) and (3) and appointing Plaintiffs and Plaintiffs' counsel to represent the Class;

B.      Finding that Redcliffe is liable under all legal and equitable claims asserted herein;

C.      Awarding damages to the Class under the claims set forth herein and all other available claims, including reimbursement of monies paid for the masks, reimbursement of out-of-pocket costs, compensatory and consequential damages as set forth above, exemplary damages, treble damages, punitive damages, and any other damages provided under the law;

D.      Ordering injunctive relief, including but not limited to, a constructive trust placed over all of Plaintiffs' funds held directly or indirectly by Redcliffe or any third party for purchases of Leaf products.

E.      Awarding any and all equitable relief, including but not limited to recission and disgorgement, including disgorgement of any and all profits;

F.      Awarding attorneys' fees, litigation costs, and interest; and

G.      Awarding any other legal or equitable relief as justice so requires.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: February 15, 2021                    Respectfully submitted,

                                            By: */s/ E. Powell Miller*
                                            E. Powell Miller (P39487)
                                            Sharon S. Almonrode (P33938)
                                            Emily E. Hughes (P68724)
                                            Dennis A. Lienhardt (P81118)
                                            William Kalas (P82113)
                                            THE MILLER LAW FIRM, P.C.
                                            950 West University Drive, Suite 300
                                            Rochester, MI  48307
                                            Telephone: (248) 841-2200
                                            Facsimile: (248) 652-2852
                                            epm@millerlawpc.com
                                            ssa@millerlawpc.com
                                            eeh@millerlawpc.com
                                            dal@millerlawpc.com
                                            wk@millerlawpc.com

                                            Kassem M. Dakhlallah (P70842)
                                            HAMMOUD DAKHLALLAH &
                                            ASSOCIATES PLLC
                                            6050 Greenfield, Ste 201
                                            Dearborn, MI 48126
                                            (313) 551-3038
                                            kd@hdalawgroup.com

                                            *Attorneys for Plaintiffs and the Class*