UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SILVIA LAZO, et al.,

          Plaintiffs,

v.

REDCLIFFE MEDICAL DEVICES, INC., and INDIEGOGO, INC.,

          Defendants.

                                               /

Case No. 2:21-cv-10336

HONORABLE STEPHEN J. MURPHY, III

**OMNIBUS OPINION AND ORDER**

Plaintiffs alleged in an amended class action complaint that Defendants Redcliffe Medical and Indiegogo had violated the Lanham Act, breached contracts, and made fraudulent misrepresentations, among several other claims. ECF 8. Plaintiffs moved for a preliminary injunction against both Defendants and to impose a constructive trust on Redcliffe's assets. ECF 15. While the parties were briefing the motion, both Defendants moved separately to compel arbitration. ECF 24; 26. And indeed, the parties fully briefed the three pending motions. Plaintiffs ultimately stipulated to withdraw the amended preliminary injunction motion against Indiegogo. ECF 40. And fifteen hours before the scheduled motions hearing, Redcliffe filed for Chapter 7 relief under the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Michigan. ECF 41, PgID 874–78; *In re Redcliffe Med. Devices, Inc.*, No. 21-48141 (Bankr. E.D. Mich.). As a result, the Court cancelled the hearing. For the reasons below, the Court will grant Indiegogo's motion to compel

1

arbitration.[1] The Court will also deny Redcliffe's motion to compel arbitration and Plaintiff's amended preliminary injunction as moot and stay the case pending resolution of the bankruptcy matter.

## BACKGROUND

At the height of the COVID-19 pandemic, Plaintiffs, like many consumers, bought protective facemasks from internet retailers. ECF 8, PgID 138–39. Plaintiffs specifically used two websites: Leaf.healthcare and Indiegogo.com. *Id.* at 149; *see* ECF 8-4; 8-5.

Leaf.healthcare is Redcliffe's website and Redcliffe used it to market and sell its facemasks known as Leaf Masks. ECF 8, PgID 141–42; ECF 8-5. Indiegogo is a "crowdfunding" website that Redcliffe also used to market and sell the Leaf Masks. ECF 8, PgID 141; ECF 8-4.

Crowdfunding on Indiegogo allows consumers to learn about various fundraising campaigns from internet companies. ECF 15, PgID 307. Consumers can then pay money to the campaigns and receive various perks. *Id.* Indiegogo in turn pockets five percent of the funds raised for the campaigns as a platform fee. ECF 8, PgID 142; ECF 8-3, PgID 206. Crowdfunding on Indiegogo is "not shopping" according to Indiegogo because each "donation is a way to support a project but does not guarantee that you will receive a perk." ECF 26-2, PgID 675.

---

[1] After reviewing the briefs, the Court need not hold a hearing on the motion. *See* E.D. Mich. L.R. 7.1(f).

Indiegogo's terms of service contain an arbitration agreement and a class-action waiver. ECF 24-1, PgID 402. The terms of use explain in bold: "<u>AGREEMENT TO ARBITRATION</u>: . . . USERS AGREE TO RESOLVE DISPUTES WITH INDIEGOGO THROUGH BINDING ARBITRATION AND USERS WAIVER CERTAIN RIGHTS TO PARTICIPATE IN CLASS ACTIONS." *Id.* The terms of use define "User," as "Campaign Owners, Contributors, or any other visitor to the Site or Users of the Services, either individually or collectively." *Id.* at 408 ¶ 20(q) (emphasis omitted). "Indiegogo," is defined as "Indiegogo, Inc. a Delaware corporation . . . ." *Id.* ¶ 20(g) (emphasis omitted).

The arbitration agreement and class action waiver are detailed even more in the terms of use section of the website. That section states, also in bold, "[Y]OU AND INDIEGOGO AGREE THAT THIS ARBITRATION UNDERTAKING IS MADE PURSUANT TO OR IN CONNECTION WITH A TRANSACTION INVOLVING INTERSTATE COMMERCE." *Id.* at 407 (emphasis omitted). The section also states in bold that "[T]HIS SECTION IS INTENDED TO BE INTERPRETED BROADLY AND GOVERNS ANY AND ALL DISPUTES BETWEEN US, INCLUDING BUT NOT LIMITED TO CLAIMS ARISING OUT OF OR RELATING TO ANY ASPECT OF THE RELATIONSHIP BETWEEN US." *Id.* (emphasis omitted). And the class action waiver disclaimed that "YOU AND INDIEGOGO AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY AND NOT AS A LEAD OR REPRESENTATIVE CLASS PLAINTIFF OR CLASS MEMBER." *Id.* (emphasis omitted).

Redcliffe ran one campaign on Indiegogo and the perks to be received were Leaf Masks. ECF 8-4, PgID 209–23. Redcliffe marketed that the Leaf Masks "deploy food-grade FDA approved optical grade silicone." ECF 8-8, PgID 251. Redcliffe claimed that the Leaf Mask was the "World's first FDA Registered, Clear, UV-C sterilizing, Smart Mask | Active Ventilation & N99+ HEPA." ECF 8-4, PgID 209. Redcliffe also disclosed that the "Leaf Mask is currently FDA registered under operator number 10075592. Although the Leaf Mask is FDA registered and testing underway, we do not claim that it is a medical device." ECF 8-8, PgID 257 (cleaned up). Still, Redcliffe maintained that "[t]he Leaf HEPA deploy[ed] cutting-edge aerospace-grade N100, MERV20+ HEPA Filters" and that Leaf Masks "got the Numbers. N100 MERV20+ HEPA . . . 99.97% Retention of 0.3µm particles yet easier to breathe than a N90 mask. . . . 5X Surface area of a conventional mask." *Id.* at 243. Last, Redcliffe touted its "production facility in Detroit" that "manufactures an average of 10,000 Leaf [M]asks per hour with a combined total production capacity of 6 millions [sic] masks per month." ECF 32-3, PgID 804. In the end, Redcliffe allegedly raised $4.4 million through Indiegogo's platform. ECF 8, PgID 146.

Plaintiffs bought the Leaf Masks through Indiegogo and Redcliffe's websites. *Id.* at 149. Many Plaintiffs alleged that, despite months of waiting, they never received their Leaf Masks. *Id.* at 146, 149, 151–54. Plaintiffs who did receive Leaf Masks alleged that the masks were shoddy. *Id.* at 146–47. Leaf Masks allegedly had "material defects . . . such as holes in the filter of the mask" or "were already used and contained dirty filters." *Id.* at 146, 149. Some Plaintiffs even "complained of

4

fungus buildup." *Id*. At bottom, Plaintiffs claimed that Redcliffe's Leaf Masks were a sham product. *See id*. at 164–96.

As of the date of this order, Redcliffe is no longer marketing the Leaf Masks on Indiegogo because Indiegogo removed the campaign from its website. ECF 27-1, PgID 758–59. Amazon.com also offered the masks for sale but stopped selling them. ECF 25, PgID 429 n.3. Amazon is not a party to the action.

## LEGAL STANDARD

I. Motion to Compel Arbitration

The Federal Arbitration Act ("FAA") instructs courts to order parties to arbitrate under an arbitration agreement after "being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. The party opposing arbitration "must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (citing *Dr.'s Assocs., Inc. v. Distajo*, 107 F.3d 126, 129–30 (2d. Cir. 1997), *cert denied*, 522 U.S. 948 (1997)). The required showing "mirrors that required to withstand summary judgment." *Id.* (citation omitted) The Court will therefore view all facts and reasonable inferences in the non-moving party's favor and must determine whether there is a genuine issue as to any material fact.

## DISCUSSION

The Court will first address Indiegogo's motion to compel arbitration. After, the Court will address the motions involving Redcliffe.

5

I.   Indiegogo Motion to Compel Arbitration

The FAA governs written arbitration agreements. 9 U.S.C. §§ 1–307; *see Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 111–12 (2001). The FAA reflects "a liberal federal policy favoring arbitration agreements" and "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). When a court considers a motion to compel arbitration, "the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citation omitted).

The plain language in the Indiegogo terms of use show that Plaintiffs agreed to arbitrate their claims against Indiegogo. The terms of use explain in bold "IMPORTANT NOTICE: AGREEMENT TO ARBITRATION: . . . USERS AGREE TO RESOLVE DISPUTES *WITH INDIEGOGO* THROUGH BINDING ARBITRATION AND USERS WAIVE CERTAIN RIGHTS TO PARTICIPATE IN CLASS ACTIONS." ECF 24-1, PgID 402 (emphasis omitted and added). The terms of use define "User," as "Campaign Owners, Contributors, or any other visitor to the Site or Users of the Services, either individually or collectively." *Id.* at 408 ¶ 20(q) (emphasis omitted). "Indiegogo," is defined as "Indiegogo, Inc. a Delaware corporation . . . ." *Id.* ¶ 20(g) (emphasis omitted). Thus, the notice's plain language states that users (Plaintiffs)

6

agreed to resolve their own disputes with Indiegogo through arbitration, and those users (Plaintiffs) waived their own class action claims against Indiegogo. *Id.* at 402.

Beyond the bolded notice, the arbitration agreement and class-action waiver are detailed even more in the same terms of use section. *Id.*; *see also id.* at 407–08 ¶ 19. The section states in bold, "*[y]ou and Indiegogo* agree that this arbitration undertaking is made pursuant to or in connection with a transaction involving interstate commerce." *Id.* at 407 (emphasis omitted and added). The section also states in bold that "[t]his section is intended to be interpreted broadly and governs any and all disputes *between us*, including but not limited to claims arising out of or relating to any aspect of the relationship *between us*." *Id.* (emphasis omitted and added).[2] The arbitration agreement therefore applies only to claims users themselves have against Indiegogo.

To be sure, section nineteen provides that "[b]y agreeing to these [t]erms, you agree to resolve any and all disputes *with Indiegogo* as follows . . . ." *Id.* at 407 (emphasis omitted and added). The arbitration agreement thus created a contract between Indiegogo and Plaintiffs, the other between Indiegogo and Plaintiffs.

The class action waiver also supports the reading. First, the waiver is plainly an agreement between Indiegogo and Plaintiffs. *Id.* ("THIS MEANS THAT *YOU AND INDIEGOGO* AGREE THAT *EACH* MAY BRING CLAIMS AGAINST THE OTHER

---

[2] The term "us" is not defined. But the term "Us" refers to "Indiegogo, Inc., a Delaware corporation, together with its parents, subsidiaries, affiliates, agents, representatives, consultants, employees, officers, and directors." *Id.* at 408 ¶ 20(g) (emphasis omitted); ¶ 21 ("Full Agreement Between You and Us").

7

ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY AND NOT AS A LEAD OR REPRESENTATIVE CLASS PLAINTIFF OR CLASS MEMBER . . . .") (emphasis omitted and added). Second, opting out of the arbitration and class action provisions require users to "send an email *to Indiegogo*." *Id.* at 408 (emphasis added). And the arbitration procedures explain that "[i]f the arbitrator finds the arbitration to be non-frivolous, *Indiegogo* will pay all other fees invoiced by JAMS." *Id.* at 407 (emphasis added). In sum, Plaintiffs agreed with Indiegogo to arbitrate their claims. *See* ECF 24-1, PgID 407–08.

The crux of the disagreement between Plaintiffs and Indiegogo is whether the arbitration agreement is unconscionable and thus invalid. ECF 34, PgID 835–43. Courts may invalidate an arbitration agreement based on "generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Dr.'s Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). Because the terms of use here contained a California choice of law provision, the Court must apply California law to the unconscionability arguments. ECF 26-8, PgID 709; ECF 26-10, PgID 722; *see generally Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 416 (6th Cir. 2011).

California's general unconscionability principles rely on two prongs. *OTO, L.L.C., v. Kho*, 8 Cal. 5th 111, 125 (2019). One prong is procedural and "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012) (citations omitted). The

8

other prong is substantive and "pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Id.* (citations omitted). The two prongs work on "a sliding scale"; "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Found. Health Psychcare Serv., Inc.*, 24 Cal. 4th 83, 114 (2000) (quotation omitted). The Court will address each prong in turn.

### 1. Procedural unconscionability

Plaintiffs asserted four arguments for procedural unconscionability. First, they argue the arbitration agreement is a contract of adhesion. ECF 34, PgID 837–38. Second, they maintain the hyperlink to the JAMS arbitration rules was allegedly confusing to consumers. *Id.* at 838. Third, Plaintiffs say the JAMS arbitration rules that would apply to the arbitration were allegedly oppressive and surprising. *Id.* at 839. And fourth, Plaintiffs submit they were allegedly pressured to buy a unique product with no market alternatives. *Id.* at 839–40. But each argument proves no degree of procedural unconscionability.

For the adhesion argument, Plaintiffs believed the standardized, boilerplate language in Indiegogo's terms of use were "clickwrap"[3] and thus oppressive when offered on a "take it or leave it" basis. ECF 24, PgID 837–38. But "an arbitration

---

[3] "A clickwrap agreement presents the user with a message on his or her computer screen, requiring that the user manifest his or her assent to the terms of the license agreement by clicking on an icon." *Stanfield v. Tawkify, Inc.*, 517 F. Supp. 3d 1002, 1004 (N.D. Cal. 2021) (quotation omitted).

9

agreement is not adhesive if there is an opportunity to opt out of it." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016). Indiegogo's terms of use allowed Plaintiffs to opt-out. ECF 26-8, PgID 711. And Plaintiffs do "not meaningfully dispute the voluntariness of the opt out procedure." *Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 877 (N.D. Cal. 2018); *see* ECF 34, PgID 837–38. Simply put, allowing Plaintiffs to opt out of arbitration is a far cry from forcing Plaintiffs into a "take it or leave it" contract.

Likewise, the hyperlink to the JAMS arbitration rules is not procedurally unconscionable. The Indiegogo terms of use explain that the purchaser "can find the JAMS rules and procedures <u>here at this link</u>." ECF 26-8, PgID 710 (emphasis in original) (hyperlink omitted). Plaintiffs appeared to claim that Indiegogo should have provided a copy of the rules rather than a hyperlink. *See* ECF 34, PgID 838. Although "fail[ing] to attach incorporated rules to an arbitration agreement may be a factor supporting a finding of unconscionability, it is insufficient to support a finding of unconscionability on its own." *Sweeney v. Tractor Supply Co.*, 390 F. Supp. 3d 1152, 1159 (N.D. Cal. 2019) (citing *Lane v. Francis Cap. Mgmt. LLC*, 224 Cal. App. 4th 676, 690 (2014)). Besides, Indiegogo was not required to provide a copy of the rules to Plaintiffs because the hyperlink found in the arbitration agreement's text was sufficient; the rules are easily found on the internet. *Id.* (finding that failing to attach copies of arbitration rules was not procedurally unconscionable because the rules were "easily found on the internet" and the rules were "linked in the text of the [a]greement itself").

Plus, as a comparative matter, the facts in the cases cited by Plaintiffs to support unconscionability bear no resemblance to the facts underlying Plaintiffs' arbitration agreement with Indiegogo. In one case, a defendant not only failed to provide the arbitration rules, but also failed to "otherwise indicate where the [p]laintiffs [could] find them." *Milliner v. Bock Evans Fin. Counsel, Ltd.*, 114 F. Supp. 3d 871, 879 (N.D. Cal. 2015) (cleaned up). And the other case dealt with preprinted contracts. *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1405–06 (2003).

Third, nothing is surprising or oppressive about which JAMS rules would apply to an arbitration. The Indiegogo terms of use provided that "the rules and procedures in effect at the time the arbitration is initiated" would apply. ECF 26-8, PgID 710. Based on the arbitration agreement's plain text, although the applicable rules might change in the future, Plaintiffs knew which rules would later apply. *See id.* The terms were not oppressive because they were clear. In fact, the cases Plaintiffs cited would support finding an arbitration agreement oppressive only when it was "unclear [as to] whether an arbitration would be conducted under the [arbitration] rules as of the time of contracting, or at the time of arbitration." *Harper*, 113 Cal. App. 4th at 1407; *see also Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 721 (2004) (The arbitration contract "fail[ed] to address whether modified [arbitration] rules or only those [arbitration] rules in effect at the time the policy was implemented apply to employment disputes."). Indiegogo's arbitration agreement differs from the agreements in *Harper* and *Fitz* because, in Indiegogo's agreement, "there would be

11

[no] preliminary fight over which set of arbitration rules governed," which would reduce Plaintiffs' legal expenses. *Cf. Harper*, 113 Cal. App. 4th at 1407.

Last, the products sold to Plaintiffs were not unique. "'[T]he availability of similar goods or services elsewhere' are relevant to evaluating whether an arbitration agreement is unconscionable." *Swain v. LaserAway Med. Grp., Inc.*, 57 Cal. App. 5th 59, 70–71 (2020) (quotation omitted). "Consumer choice is therefore relevant, but not dispositive, to an assessment of procedural unconscionability." *O'Donovan v. CashCall, Inc.*, 278 F.R.D. 479, 501 (N.D. Cal. 2011) (citations omitted). Plaintiffs here bought protective masks. Buying comparable protective masks from other retailers was common. To be sure, the amended complaint listed customer complaints that suggested class members owned other protective masks, which were better and cheaper. ECF 8, PgID 153 ("My much cheaper cloth vogmasks are way better . . . . [The Leaf Mask] muffles the voice 100 times more than anything else I have used."). And the case that Plaintiffs cited dealt with the first-generation iPhone, which, according to the district court there, had no other smartphone competitors at the time. *Stiener v. Apple Comput., Inc.*, 556 F. Supp. 2d 1016, 1026 (N.D. Cal. 2008). In all, Plaintiffs' four procedural unconscionability arguments lack merit.

    2.    *Substantive unconscionability*

Plaintiffs alleged that the arbitration agreement lacked mutuality and thus was illusory. ECF 34, PgID 841. Plaintiffs highlighted that the terms of use allow Indiegogo to "amend the Terms at any time in its sole discretion by posting a revised version of the Terms." *Id.*; *see* ECF 26-8, PgID 705. But a "unilateral modification

clause does not make [an] arbitration provision itself unconscionable." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1033 (9th Cir. 2016). Admittedly, an earlier Ninth Circuit decision determined that, among other unconscionable terms, unilateral modification was substantively unconscionable. *Ingle v. Cir. City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003). But *Ingle* is an outlier and not good law. *Tompkins*, 840 F.3d at 1033 (collecting cases); *see, e.g.*, *Borgarding v. JPMorgan Chase Bank*, No. cv 16-2485, 2016 WL 8904413, at *8 (C.D. Cal. Oct. 31, 2016) ("*Ingle*'s holding on unilateral modification provisions no longer accurately describes California law."). For those reasons, the arbitration agreement is not substantively unconscionable.

In sum, Plaintiffs failed to show unconscionability under either prong, and the arbitration agreement is valid and enforceable. The Court will therefore grant Indiegogo's motion to compel arbitration.

II. <u>Motions Involving Redcliffe</u>

When a corporation files for bankruptcy under Chapter 7, the petition "operates as a stay" of any "judicial, administrative, or other action or proceeding against the debtor that was . . . commenced before the commencement of the [bankruptcy] case[.]" 11 U.S.C. § 362(a). Plaintiffs began the present action against Redcliffe before the bankruptcy filing. The Court will therefore stay the case pending the resolution of the bankruptcy proceeding. Because the Court cannot resolve Redcliffe's motion to compel arbitration, ECF 24, or Plaintiffs' amended preliminary

13

injunction as to Redcliffe, ECF 15, the Court will deny the motions as moot. The parties may revisit the claims after the automatic stay terminates.

## CONCLUSION

The timing and substance of Redcliffe's bankruptcy filing is a ham-handedly questionable effort to delay justice. The Court is more than familiar with Redcliffe's CEO, Lalit Kumar, and his established, shady business practices. In particular, the Court is presiding over a false representations and theft case involving Sakthi Automotive Group, a company that Kumar formerly managed. *The Huntington Nat'l Bank v. Sakthi Auto. Grp. USA, Inc.*, No. 2:19-cv-10890 (E.D. Mich.). In *Sakthi*, the Court appointed a receiver based on specific findings of fraud by Sakthi and imminent danger that property would be lost through diversions of cash collateral by its management. No. 2:19-cv-10890, ECF 49, PgID 2489–91 (E.D. Mich. May 16, 2019); *see also* 2019 WL 2537547, at *3–4 (E.D. Mich. June 20, 2019). Based on the fraud allegations in Plaintiffs' amended complaint and evidence attached to Plaintiffs' briefs here—not to mention the last-minute bankruptcy filing made to avoid potential imposition of an injunction—it appears that Kumar, Redcliffe's CEO, is likely again engaging in shady business dealings like those in *Sakthi*. *See* ECF 8, PgID 146, 151–54; ECF 8-12; ECF 8-14; ECF 32-2 (local news article). In short, the bankruptcy court and the United States Trustee should be on notice that Redcliffe's conduct reeks of possible fraud. Although the Court cannot resolve the preliminary injunction motion now, the Court will—if Plaintiffs renew the motion—resolve it with alacrity after the

14

bankruptcy case is completed or if Plaintiffs successfully seek relief from the automatic stay under 11 U.S.C. § 362(d).

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Redcliffe's motion to compel arbitration [24] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Indiegogo's motion to compel arbitration [26] is **GRANTED**.

**IT IS FURTHER ORDERED** that Indiegogo and Plaintiffs are **COMPELLED** to arbitrate in accordance with the arbitration agreement.

**IT IS FURTHER ORDERED** that Indiegogo is **DISMISSED**.

**IT IS FURTHER ORDERED** that the amended motion for a preliminary injunction as to Indiegogo [15] is **WITHDRAWN**.

**IT IS FURTHER ORDERED** that the amended motion for a preliminary injunction as to Redcliffe [15] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the case is **STAYED** pending resolution of Redcliffe's bankruptcy.

**IT IS FURTHER ORDERED** that the Clerk of the Court must administratively **CLOSE** and **STAY** the case.

**IT IS FURTHER ORDERED** that the case can be **REOPENED** upon motion of any party after the completion of Redcliffe's bankruptcy or if the bankruptcy court grants relief from the automatic stay. A motion to reopen the case must be filed within

**SIXTY DAYS** of the termination of Redcliffe's bankruptcy proceedings or after the bankruptcy court grants relief from the stay.

    **SO ORDERED.**

s/ Stephen J. Murphy, III  
STEPHEN J. MURPHY, III  
United States District Judge

Dated: October 18, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 18, 2021, by electronic and/or ordinary mail.

s/ David P. Parker  
Case Manager
